UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA


CORNELIO VEDOLLA ESPINOZA,    ) 1:10-cv—01521-LJO-SKO-HC
                              )
             Petitioner,      ) ORDER SUBSTITUTING RON BARNES,
                              ) WARDEN, AS RESPONDENT
                              )
    v.                        ) FINDINGS AND RECOMMENDATIONS TO
                              ) DENY THE PETITION FOR WRIT OF
RON BARNES, Warden,           ) HABEAS CORPUS (Doc. 1), DENY
                              ) PETITIONER'S REQUEST FOR AN
             Respondent.      ) EVIDENTIARY HEARING, ENTER
                              ) JUDGMENT FOR RESPONDENT, AND
_____) DECLINE TO ISSUE A CERTIFICATE OF
                                APPEALABILITY

                                OBJECTIONS DEADLINE:
                                THIRTY (30) DAYS


     Petitioner is a state prisoner proceeding pro se and in

forma pauperis with a petition for writ of habeas corpus pursuant

to 28 U.S.C. § 2254.  The matter has been referred to the

Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local

Rules 302 and 304.  Pending before the Court is the petition,

which was filed on August 23, 2010, along with a request for an

evidentiary hearing.  Respondent filed an answer with supporting

documentation on March 7, 2011.  Petitioner filed a traverse on

August 2, 2011.

     I.  Jurisdiction

     Because the petition was filed after April 24, 1996, the

effective date of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), the AEDPA applies in this proceeding.  Lindh v. Murphy, 521 U.S. 320, 327 (1997), cert. denied, 522 U.S. 1008 (1997); Furman v. Wood, 190 F.3d 1002, 1004 (9th Cir. 1999).

A district court may entertain a petition for a writ of habeas corpus by a person in custody pursuant to the judgment of a state court only on the ground that the custody is in violation of the Constitution, laws, or treaties of the United States.  28 U.S.C. §§ 2254(a), 2241(c)(3); Williams v. Taylor, 529 U.S. 362, 375 n.7 (2000); Wilson v. Corcoran, 562 U.S. –, –, 131 S.Ct. 13, 16 (2010) (per curiam).  Petitioner claims that in the course of the proceedings resulting in his conviction, he suffered violations of his Constitutional rights.  Further, the challenged judgment was rendered by the Tulare County Superior Court (TCSC), which is located within the territorial jurisdiction of this Court.  28 U.S.C. §§ 84(b), 2254(a), 2241(a), (d).

Respondent filed an answer on behalf of Respondent Mike McDonald, who was the warden at High Desert State Prison (HDSP), where Petitioner has been incarcerated at all pertinent times during this proceeding.  Petitioner thus named as a respondent a person who had custody of the Petitioner within the meaning of 28 U.S.C. § 2242 and Rule 2(a) of the Rules Governing Section 2254 Cases in the District Courts (Habeas Rules).  See, Stanley v. California Supreme Court, 21 F.3d 359, 360 (9th Cir. 1994).

Accordingly, this Court has jurisdiction over the subject matter of this action and over the Respondent.

II.  Order Substituting Ron Barnes, Warden, as Respondent

The official website of the California Department of

Corrections and Rehabilitation (CDCR) reflects that Ron Barnes is presently acting as warden of the HDSP.[1]

Fed. R. Civ. P. 25(d) provides that an action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending; rather, the officer's successor is automatically substituted as a party.  The rule further provides that a court may at any time order substitution, but the absence of such an order does not affect the substitution.

Accordingly, it is ORDERED that Ron Barnes, Warden, is SUBSTITUTED as Respondent.

III.  <u>Procedural Summary</u>

At a jury trial held in TCSC case number VCF188670, Petitioner was convicted on March 19, 2008, of having committed the offense of carjacking on or about March 3, 2007, in violation of Cal. Pen. Code § 215(a) (count one); assault with a semi-automatic firearm in violation of Cal. Pen. Code § 245(b) (count two); criminal threats in violation of Cal. Pen. Code § 422 (count three); and possession of a firearm by a felon in violation of Cal. Pen. Code § 12021(a)(1) (count four).  With respect to the first three counts, Petitioner was found to have personally used a handgun within the meaning of Cal. Pen. Code §§ 12022.53(b) and 12022.5(a).  In connection with all counts, the court found that Petitioner had a prior serious felony conviction

---

[1] The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including undisputed information posted on official websites.  Fed. R. Evid. 201(b); <u>United States v. Bernal-Obeso</u>, 989 F.2d 331, 333 (9th Cir. 1993); <u>Daniels-Hall v. National Education Association</u>, 629 F.3d 992, 999 (9th Cir. 2010).  The address of the official website for the CDCR is http://www.cdcr.ca.gov.

within the meaning of Cal. Pen. Code

§ 667(a)(1).  (LD 1, 85-86; 48-51.)[2]  Petitioner was sentenced on July 24, 2008, to twenty-five years in state prison.  (LD 1, 178-79.)

Petitioner timely appealed to the California Court of Appeal, Fifth Appellate District (CCA).  On May 28, 2009, the CCA issued a decision affirming the judgment.  (Doc. 14-1, 4.) However, it modified the verdict in count two to reflect a conviction pursuant to Cal. Pen. Code § 245(a)(2) instead of § 245(b), modified the firearm enhancement concerning count two to reflect a true finding under Cal. Pen. Code § 12022.5(a), and remanded the case for re-sentencing in accordance with the CCA's decision.  (Id.)  Petitioner filed a petition for review in the California Supreme Court in case number S174443 which was summarily denied on August 12, 2009.  (LD 8.)[3]

On September 29, 2009, the TCSC issued an amended abstract of judgment that reflected a conviction of assault with a firearm in violation of § 245(a)(2) (count two) with special allegations pursuant to §§ 12022.5(a) and 667(a)(1).  Petitioner was sentenced to six years with a consecutive four-year enhancement pursuant to Cal. Pen. Code § 12022.5(b); a consecutive five years pursuant to § 667(a)(1) was stayed pursuant to Cal. Pen. Code

---

[2] "LD" refers to documents lodged by Respondent in support of the answer.

[3] The Court may take judicial notice of facts that are capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned, including undisputed information posted on official websites. Fed. R. Evid. 201(b); United States v. Bernal-Obeso, 989 F.2d 331, 333 (9th Cir. 1993); Daniels-Hall v. National Education Association, 629 F.3d 992, 999 (9th Cir. 2010).  It is appropriate to take judicial notice of the docket sheet of a California court.  White v Martel, 601 F.3d 882, 885 (9th Cir. 2010), cert. denied, 131 S.Ct. 332 (2010).  The address of the official website of the California state courts is www.courts.ca.gov.

1   § 654.   (LD 9.)

2       IV.   <u>Facts</u>

3       In a habeas proceeding, pursuant to § 2254(e)(1), a

4   determination of a factual issue made by a state court shall be

5   presumed to be correct applies to a statement of facts drawn from

6   a state appellate court's decision.   <u>Moses v. Payne</u>, 555 F.3d

7   742, 746 n.1 (9th Cir. 2009).

8       The following statement of facts is taken from the decision

9   of the CCA in <u>People v. Cornelio Vedolla Espinoza</u>, case number

10  F055956, which was filed on May 28, 2009:

11                  FACTUAL AND PROCEDURAL SUMMARY

12      Alejandro Gil wanted to sell his car, a black Ford
        Mustang, so he placed a "For Sale" sign in its window
13      and parked it in a lot on Olive Street in Porterville.
        Gil received a telephone call from Espinoza who
14      indicated he was interested in purchasing the car.
        Espinoza made arrangements to meet at Gil's home so he
15      could test drive the vehicle.

16      The afternoon of March 3, 2007, Espinoza arrived at
        Gil's home and the two men walked to the lot where the
17      car was parked. Espinoza climbed into the driver's seat
        and Gil sat in the passenger's seat. Espinoza drove for
18      several minutes, arriving at the outskirts of town. At
        that point, Espinoza pulled a chrome gun from his
19      pocket, moved his hand back on the gun in a ratcheting
        motion, and pointed the gun at Gil. Espinoza ordered
20      Gil out of the car, telling Gil to run or be killed.
        Gil was afraid Espinoza would kill him, so he ran.
21      After getting away from Espinoza, Gil called the
        police.

22
        On August 9, 2007, Espinoza and his girlfriend went to
23      the local California Highway Patrol (CHP) office to
        obtain information regarding a car accident. The CHP
24      ran a check of the vehicle identification number (VIN)
        and license plate of the car Espinoza was driving, a
25      Ford Mustang. The VIN listed for the license plate did
        not match the VIN on the dash of the Mustang. The CHP
26      also noticed that while the exterior of the Mustang was
        red, the interior of the vehicle and the area near the
27      rear license plate were black.

28      Sheriff's Deputy Genaro Pinon arrived at the CHP office

                                  5

to interview Espinoza. Espinoza claimed his cousin had given him the car. Initially, Espinoza stated he did not know why the VIN and license plate did not match. He then changed his story and stated he had swapped license plates with another vehicle.

During the course of the interview, Pinon received a telephone call from Gil. Pinon left Espinoza at the CHP office and went to pick up Gil for a field lineup. Gil was riding in the back of Pinon's vehicle when they returned to the CHP office. As Pinon drove into the parking lot, and before Pinon could direct his attention, Gil spotted and identified Espinoza as the man who had stolen his car.

After Gil identified Espinoza, Pinon again interviewed Espinoza. Espinoza denied any involvement in a carjacking and blamed his cousin. As Pinon was handcuffing Espinoza, Espinoza remarked, "Okay, okay, I'll tell you the truth." Espinoza confessed he had stolen the car, described specific details about the crime, and claimed the gun he had pointed at Gil was a fake. No gun, real or fake, was recovered.

Espinoza was charged in count 1 with carjacking (§ 215, subd. (a)); count 2, assault with a semiautomatic firearm (§ 245, subd. (b)); count 3, making criminal threats (§ 422); and count 4, felon in possession of a firearm (§ 12021, subd. (a)(1)). It was further alleged as to all counts that Espinoza had suffered a prior strike conviction. As to counts 1 through 3, firearm and prior serious felony enhancements were alleged.

Espinoza presented an alibi defense at trial, claiming that he had been with his brother and girlfriend at the time of the carjacking. Espinoza also claimed that he confessed to the crime only because he could hear his girlfriend crying and he was afraid Pinon would arrest her.

The jury convicted Espinoza of all counts and returned true findings on the firearm enhancements. Espinoza waived a jury trial on the prior conviction allegation and the trial court found it to be true as to all counts.

Espinoza moved for a new trial on the grounds of juror misconduct. The motion was denied. On July 25, 2008, Espinoza was sentenced to a term of 25 years in state prison.

(Doc. 14-1, 4-6.)

///

V.   <u>Standard of Decision and Scope of Review</u>

Title 28 U.S.C. § 2254 provides in pertinent part:

> (d) An application for a writ of habeas corpus on
> behalf of a person in custody pursuant to the
> judgment of a State court shall not be granted
> with respect to any claim that was adjudicated
> on the merits in State court proceedings unless
> the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to,
> or involved an unreasonable application of, clearly
> established Federal law, as determined by the
> Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an
> unreasonable determination of the facts in light
> of the evidence presented in the State court
> proceeding.

Clearly established federal law refers to the holdings, as opposed to the dicta, of the decisions of the Supreme Court as of the time of the relevant state court decision. <u>Cullen v. Pinholster</u>, - U.S. -, 131 S.Ct. 1388, 1399 (2011); <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362, 412 (2000). It is thus the governing legal principle or principles set forth by the Supreme Court at the pertinent time. <u>Lockyer v. Andrade</u>, 538 U.S. 71-72.

A state court's decision contravenes clearly established Supreme Court precedent if it reaches a legal conclusion opposite to, or substantially different from, the Supreme Court's or concludes differently on a materially indistinguishable set of facts. <u>Williams v. Taylor</u>, 529 U.S. at 405-06. The state court need not have cited Supreme Court precedent or have been aware of it, "so long as neither the reasoning nor the result of the state-court decision contradicts [it]." <u>Early v. Packer</u>, 537 U.S. 3, 8 (2002). A state court unreasonably applies clearly

1   established federal law if it either 1) correctly identifies the

2   governing rule but applies it to a new set of facts in an

3   objectively unreasonable manner, or 2) extends or fails to extend

4   a clearly established legal principle to a new context in an

5   objectively unreasonable manner. Hernandez v. Small, 282 F.3d

6   1132, 1142 (9th Cir. 2002); see, Williams, 529 U.S. at 407. An

7   application of clearly established federal law is unreasonable

8   only if it is objectively unreasonable; an incorrect or

9   inaccurate application is not necessarily unreasonable.

10  Williams, 529 U.S. at 410.

11      A state court's determination that a claim lacks merit

12  precludes federal habeas relief as long as fairminded jurists

13  could disagree on the correctness of the state court's decision.

14  Harrington v. Richter, 562 U.S. -, 131 S.Ct. 770, 786 (2011).

15  Even a strong case for relief does not render the state court's

16  conclusions unreasonable. Id. To obtain federal habeas relief,

17  a state prisoner must show that the state court's ruling on a

18  claim was "so lacking in justification that there was an error

19  well understood and comprehended in existing law beyond any

20  possibility for fairminded disagreement." Id. at 786-87. The

21  § 2254(d) standards are "highly deferential standard[s] for

22  evaluating state-court rulings" which require that state court

23  decisions be given the benefit of the doubt, and that Petitioner

24  bear the burden of proof. Cullen v. Pinholster, 131 S. Ct. at

25  1398. Further, habeas relief is not appropriate unless each

26  ground supporting the state court decision is examined and found

27  to be unreasonable under the AEDPA. Wetzel v. Lambert, --U.S.--,

28  132 S.Ct. 1195, 1199 (2012).

1    In assessing under section 2254(d)(1) whether the state

2  court's legal conclusion was contrary to or an unreasonable

3  application of federal law, "review... is limited to the record

4  that was before the state court that adjudicated the

5  claim on the merits." Cullen v. Pinholster, 131 S. Ct. at 1398.

6  Evidence introduced in federal court has no bearing on review

7  pursuant to § 2254(d)(1). Id. at 1400.  Further, 28 U.S.C.

8  § 2254(e)(1) provides that in a habeas proceeding brought by a

9  person in custody pursuant to a judgment of a state court, a

10 determination of a factual issue made by a state court shall be

11 presumed to be correct.  The petitioner has the burden of

12 producing clear and convincing evidence to rebut the presumption

13 of correctness.  A state court decision on the merits based on a

14 factual determination will not be overturned on factual grounds

15 unless it was objectively unreasonable in light of the evidence

16 presented in the state proceedings. Miller-El v. Cockrell, 537

17 U.S. 322, 340 (2003).

18    The last reasoned decision must be identified in order to

19 analyze the state court decision pursuant to 28 U.S.C.

20 § 2254(d)(1). Barker v. Fleming, 423 F.3d 1085, 1092 n.3 (9th

21 Cir. 2005); Bailey v. Rae, 339 F.3d 1107, 1112-13 (9th Cir.

22 2003).  Here, the CCA's decision was the last reasoned decision

23 in which the state court adjudicated Petitioner's claims on the

24 merits.  Where there has been one reasoned state judgment

25 rejecting a federal claim, later unexplained orders upholding

26 that judgment or rejecting the same claim are presumed to rest

27 upon the same ground. Ylst v. Nunnemaker, 501 U.S. 797, 803

28 (1991).  This Court will thus "look through" the unexplained

1   decision of the California Supreme Court to the DCA's last

2   reasoned decision as the relevant state-court determination. Id.

3   at 803-04; Taylor v. Maddox, 366 F.3d 992, 998 n.5 (9th Cir.

4   2004).

5       VI.   Suggestive Identification

6       Petitioner argues that the evidence that Petitioner was the

7   perpetrator of the crimes was insufficient because a field

8   identification of Petitioner by the victim was so impermissibly

9   suggestive that it violated Petitioner's right to due process of

10  law guaranteed by the Fourteenth Amendment.

11      A.   The State Court Decision

12      The DCA's decision regarding Petitioner's claim concerning

13  the field identification and a related claim concerning trial

14  counsel's alleged ineffective assistance for failing to object to

15  evidence of the identification is as follows:

16                          DISCUSSION

17      Espinoza contends that the pretrial identification
        procedures used were procedurally flawed and therefore
18      the in-court identification also was flawed. Espinoza
        further argues his convictions for assault with a
19      semiautomatic weapon and being a felon in possession of
        a firearm must be reversed because the evidence failed
20      to establish that he had a semiautomatic or any real,
        as opposed to a fake, weapon. He further contends that
21      his criminal threat conviction must be reversed for
        insufficient evidence in that there was no "imminent
22      prospect of execution" because he told the victim to
        run or else be killed, and the victim chose to run.

23
24      I. Challenge to Identification Procedures

25      Gil first identified Espinoza as the perpetrator when
        officers brought Gil to the CHP office for a field
26      lineup. Officers had told Gil that his car had been
        found and the officers wanted Gil to identify the
27      person found driving his car. As soon as the officer
        drove into the CHP parking lot, with Gil riding in the
28      back seat, Gil pointed at Espinoza and said, "That's
        him." Gil identified Espinoza before the officer had an

opportunity to direct Gil's attention to Espinoza. Gil later identified Espinoza in court as his assailant.

Espinoza maintains that the field lineup procedure was unreliable and impermissibly suggestive. He also contends the circumstances under which Gil identified him were so suggestive as to taint the in-court identification. At no time, however, did Espinoza ever challenge the identification procedures in the trial court. When a defendant fails to object to identification procedures in the trial court, he or she is barred from raising the issue on appeal. (*People v. Cunningham* (2001) 25 Cal.4th 926, 989.) Having failed to challenge the identification procedures in the trial court, Espinoza is barred from challenging them on appeal. (*Ibid.*)

Anticipating a future claim by Espinoza that his counsel was ineffective, we conclude any error in failing to raise the issue was harmless beyond a reasonable doubt. (*Chapman v. California* (1967) 386 U.S. 18, 24.) Espinoza was driving the stolen car and confessed to the crime. His confession corroborated several details of the crime when questioned by officers, including the route driven, and the expression on Gil's face when confronted with a gun. Thus, any failure by Espinoza's counsel did not prejudice him.

(Doc. 14-1, 6-7.)

        B.  Analysis

    Respondent argues that the CCA's determination that Petitioner's failure to object to the identification barred him from challenging it constitutes an adequate and independent state procedural ground that forecloses this Court's review of the decision.

    The doctrine of procedural default is a specific application of the more general doctrine of independent state grounds.  It provides that when a prisoner has defaulted a claim by violating a state procedural rule which would constitute adequate and independent grounds to bar direct review in the United States Supreme Court, the prisoner may not raise the claim in federal

habeas absent a showing of cause and prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice. Coleman v. Thompson, 501 U.S. 722, 729-30 (1991); Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003). This rule applies regardless of whether the default occurred at trial, on appeal, or on state collateral review. Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

Because state procedural default is an affirmative defense, the state has the obligation to plead the defense or lose the right to assert the defense thereafter. Bennett v. Mueller, 322 F.3d at 585. Further, the state bears the ultimate burden of persuasion as to the adequacy and independence of the pertinent rule. Id. at 585-86. However, once the state adequately pleads the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place the defense in issue shifts to the petitioner. Id. at 586. The Petitioner may satisfy the burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Id. Once the petitioner has done so, the ultimate burden of proof of the defense is on the state. Id. at 586.

For a state procedural rule to be independent, the state law basis for the decision must not be interwoven with federal law. Bennett v. Mueller, 322 F.3d at 581. A state law ground is so interwoven if the state has made application of the procedural bar depend on an antecedent ruling on federal law, such as the determination of whether federal constitutional error has been committed. Id. Independence is determined as of the date of the

state court order that imposed the procedural bar.  La Crosse v. Kernan, 244 F.3d 702, 704 (9th Cir. 2001).

Here, the state court's decision was based on People v. Cunningham, 25 Cal.4th 926, 989 (2001), which held that a contention that a photographic identification was suggestive was waived because the defendant failed to timely object to evidence of the identification at trial.  Id.  The court in Cunningham relied on California Evidence Code § 353, which prohibited reversal of a judgment because of the erroneous admission of evidence unless there was a timely objection, as well as on state cases that had applied § 353.  Id.  The state court's application of the state law requirement of a timely objection at the trial court level was not interwoven with federal law and was thus independent.

In the absence of exceptional circumstances, a procedural ground is "adequate" where it is firmly established and regularly followed.  Walker v. Martin, –U.S.–, 131 S.Ct. 1120, 1127-28 (2011).  The Ninth Circuit has long recognized that California's contemporaneous objection rule is adequate to support the judgment where a party has failed to make any objection to the admission of evidence.  See, Melendez v. Pliler, 288 F.3d 1120, 1125 (9th Cir. 2002) (citing Garrison v. McCarthy, 653 F.2d 374, 377 (9th Cir. 1981), which held that the failure to object to a photographic identification during trial would bar review of a claim).  There is nothing before this Court that would warrant a different conclusion in the present case.

Mere negligence of counsel generally does not constitute cause sufficient to excuse procedural default; however, cause may

be demonstrated by a showing that counsel's failure rose to the level of a constitutional violation under Strickland v. Washington, 466 U.S. 668 (1984). This includes a showing that there is a reasonable probability that the outcome of the trial would have been different in the absence of counsel's failings. See, Edwards v. Carpenter, 529 U.S. 446, 451 (2000).

To demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth Amendments, a convicted defendant must show that 1) counsel's representation fell below an objective standard of reasonableness under prevailing professional norms in light of all the circumstances of the particular case; and 2) unless prejudice is presumed, it is reasonably probable that, but for counsel's errors, the result of the proceeding would have been different. Strickland v. Washington, 466 U.S. 668, 687-94 (1984); Lowry v. Lewis, 21 F.3d 344, 346 (9th Cir. 1994). A petitioner must identify the acts or omissions of counsel that are alleged to have been deficient. Strickland, 466 U.S. 690. This is the same standard that is applied on direct appeal and in a motion for a new trial. Strickland, 466 U.S. 697-98.

In determining whether counsel's conduct was deficient, a court should consider the overall performance of counsel from the perspective of counsel at the time of the representation. Strickland, 466 U.S. at 689. There is a strong presumption that counsel's conduct was adequate and within the exercise of reasonable professional judgment and the wide range of reasonable professional assistance. Strickland, 466 U.S. at 688-90.

///

1    In determining prejudice, a reasonable probability is a
2  probability sufficient to undermine confidence in the outcome of
3  the proceeding.  Strickland, 466 U.S. at 694. In the context of a
4  trial, the question is whether there is a reasonable probability
5  that, absent the errors, the fact finder would have had a
6  reasonable doubt respecting guilt.  Strickland, 466 U.S. at 695.
7  This Court must consider the totality of the evidence before the
8  fact finder and determine whether the substandard representation
9  rendered the proceeding fundamentally unfair or its results
10 unreliable.  Strickland, 466 U.S. at 687, 696.  A court need not
11 address the deficiency and prejudice inquiries in any given order
12 and need not address both components if the petitioner makes an
13 insufficient showing on one.  Strickland, 466 U.S. at 697.

14    Here, the evidence before the trier of fact included law
15 enforcement officers' observations of Petitioner's possession of
16 the car; Petitioner's inconsistent statements to Deputy Pinon
17 concerning the license plate that did not match the VIN; Gil's
18 testimony concerning the facts of the carjacking; and
19 Petitioner's confession that he had stolen the car, which
20 included details of the offense, such as the route taken by
21 Petitioner and Gil as well as Gil's extreme fright when
22 Petitioner pulled the gun and pointed it at Gil.  (RT 57.)  Even
23 assuming counsel's failure to object to the evidence of the
24 identification was objectively unreasonable, there is no showing
25 of the necessary resulting prejudice.  In light of the other
26 evidence of Petitioner's guilt, it was not reasonably probable
27 that in the absence of counsel's failings, the trier of fact
28 would have had a reasonable doubt as to Petitioner's guilt.

Thus, Petitioner has not established cause.

Likewise, Petitioner could not establish prejudice to overcome the procedural default.  A petitioner must show that actual prejudice resulted from the inability to raise the issue. Murray v. Carrier, 477 U.S. 478, 494 (1986).  This entails a showing that the errors worked to the petitioner's "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions."  Murray, 477 U.S. at 494 (quoting United States v. Frady, 456 U.S. 152, 170 (1982)); Leavitt v. Arave, 383 F.3d 809, 830 (9th Cir. 2004); Correll v. Stewart, 137 F.3d 1404, 1415-16 (9th Cir. 1998).

As previously noted, the weight of the evidence of Petitioner's guilt precludes a conclusion that Petitioner suffered actual prejudice or any actual and substantial disadvantage.  Likewise, there is no basis for a conclusion that Petitioner suffered any miscarriage of justice.

Accordingly, the Court concludes that procedural default bars consideration of Petitioner's due process claim concerning allegedly suggestive identification evidence.  It will be recommended that the Court decline to consider Petitioner's due process claim.

VII.   Ineffective Assistance of Counsel

With respect to the state court's decision that counsel's failure to object to the identification evidence was not a violation of Petitioner's right to the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments, it must be determined whether the decision was contrary to, or an unreasonable application of, clearly established federal law.

In making this determination, this Court does not engage in de novo review; instead, the Court will proceed pursuant to § 2254(d)(1).  The Supreme Court has described the high bar presented by § 2254(d)(1) for prevailing on a claim of ineffective assistance of counsel:

> "To establish deficient performance, a person challenging a conviction must show that 'counsel's representation fell below an objective standard of reasonableness.' [Strickland,] 466 U.S., at 688 [104 S.Ct. 2052]. A court considering a claim of ineffective assistance must apply a 'strong presumption' that counsel's representation was within the 'wide range' of reasonable professional assistance. Id., at 689 [104 S.Ct. 2052]. The challenger's burden is to show 'that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.' Id., at 687 [104 S.Ct. 2052].
>
> "With respect to prejudice, a challenger must demonstrate 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.' ...
>
> " 'Surmounting Strickland's high bar is never an easy task.' Padilla v. Kentucky, 559 U.S. ----, ---- [130 S.Ct. 1473, 1485, 176 L.Ed.2d 284] (2010). An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial [or in pretrial proceedings], and so the Strickland standard must be applied with scrupulous care, lest 'intrusive post-trial inquiry' threaten the integrity of the very adversary process the right to counsel is meant to serve. Strickland, 466 U.S., at 689-690 [104 S.Ct. 2052]. Even under de novo review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is 'all too tempting' to 'second-guess counsel's assistance after conviction or adverse sentence.' Id., at 689 [104 S.Ct. 2052]; see also Bell v. Cone, 535 U.S. 685, 702, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002); Lockhart v. Fretwell, 506 U.S. 364, 372, 113 S.Ct. 838, 122 L.Ed.2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom. Strickland, 466 U.S., at 690, 104 S.Ct. 2052.

> "Establishing that a state court's application of
> Strickland was unreasonable under § 2254(d) is all the
> more difficult. The standards created by Strickland and
> § 2254(d) are both 'highly deferential,' id., at 689
> [104 S.Ct. 2052]; Lindh v. Murphy, 521 U.S. 320, 333,
> n. 7, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997), and when
> the two apply in tandem, review is 'doubly' so,
> Knowles, 556 U.S., at ----, 129 S.Ct., at 1420. The
> Strickland standard is a general one, so the range of
> reasonable applications is substantial. 556 U.S., at
> ---- [129 S.Ct., at 1420]. Federal habeas courts must
> guard against the danger of equating unreasonableness
> under Strickland with unreasonableness under § 2254(d).
> When § 2254(d) applies, the question is not whether
> counsel's actions were reasonable. The question is
> whether there is any reasonable argument that counsel
> satisfied Strickland's deferential standard.

Premo v. Moore, -U.S. -, 131 S.Ct. 733, 739-40 (2011) (quoting

Harrington v. Richter, –U.S.–, 131 S.Ct. 770 (2011)).

Here, the state court did not expressly cite to Strickland
or to federal standards in its decision on ineffective
assistance.  However, its decision was consistent with the
analysis customarily undertaken pursuant to Strickland.  The
state court reasonably concluded that even assuming counsel's
failure to object to the identification evidence was objectively
unreasonable, Petitioner had not shown that in light of the
evidence against him, a different result was reasonably probable.
The state court's decision was not "so lacking in justification
that there was an error well understood and comprehended in
existing law beyond any possibility for fairminded disagreement."
Harrington v. Richter, 131 S.Ct. at 786-87.

Accordingly, it will be recommended that the Court deny
Petitioner's claim that counsel's failure to object to the
identification evidence violated his right to the effective
assistance of counsel.

1  VIII.  <u>Insufficiency of the Evidence</u>

2  Petitioner challenges the sufficiency of the evidence to

3  support his conviction of several substantive offenses.

4  A.  <u>Assault with a Firearm</u>

5  Petitioner contends that his conviction on count 2 for

6  assault with a firearm must be reversed because the evidence was

7  insufficient to establish the existence of a firearm.

8  1.  <u>The State Court's Decision</u>

9  The CCA's decision on Petitioner's claim concerning the

10  insufficiency of the evidence to support his conviction of

11  assault with a firearm was the last reasoned decision from a

12  state court on the issue.  The state court's decision is as

13  follows:

14  II. Evidence of Assault with a Semiautomatic Firearm

15  Espinoza claims the evidence was insufficient to
   establish that he used a semiautomatic firearm. He also
16  contends the trial court did not instruct the jury on
   the elements of a section 245, subdivision (b) offense.
17  He is correct.

18  Judicial Council of California Criminal Jury
   Instructions (2007-2008) CALCRIM No. 875, revised June
19  2007, is the standard instruction used for instructing
   a jury on section 245, subdivisions (a) and (b). That
20  instruction contains a definition of "firearm" and a
   separate definition of "semiautomatic firearm."
21  Depending upon the evidence and theory of the case,
   different bracketed provisions of the instruction are
22  to be given.

23  We reject the People's contention that "semiautomatic
   firearm" is a term of common meaning needing no definition.
24  (See *People v. Griffin* (2004) 33 Cal.4th 1015,
   1022-1023.) Clearly, the term has a technical meaning
25  requiring definition, which is why CALCRIM No. 875
   includes such a definition. (See *In re Jorge M.* (2000)
26  23 Cal.4th 866, 874-875, fn. 4.) The trial court,
   however, failed to define "semiautomatic firearm" or
27  include the language necessary to instruct on the
   offense of assault with a semiautomatic firearm.
28  Instead, the trial court defined "firearm" and
   instructed only on the section 245, subdivision (a)

19

offense of assault with a firearm.

Furthermore, even if the jury had been instructed properly on the section 245, subdivision (b) offense of assault with a semiautomatic weapon, there was insufficient evidence to support a conviction for this offense.

In reviewing the sufficiency of the evidence, the question is whether, after viewing the evidence in the light most favorable to the judgment, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*Jackson v. Virginia* (1979) 443 U.S. 307, 319.) This court reviews "the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence-that is, evidence which is reasonable, credible, and of solid value-such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Johnson* (1980) 26 Cal.3d 557, 578.)

In assessing a sufficiency of the evidence claim, we presume in support of the judgment the existence of every fact the trier reasonably could have deduced from the evidence and draw all reasonable inferences in support of the judgment. (*People v. Rayford* (1994) 9 Cal.4th 1, 23 (*Rayford*).) A judgment should not be reversed on this ground unless it appears that under no hypothesis is the evidence sufficient to support the conviction. (*People v. Sanchez* (2003) 113 Cal.App.4th 325, 329 (*Sanchez*).)

Gil testified that during the carjacking Espinoza pulled out a "chromed" gun and pointed it at him. When Gil asked Espinoza to calm down, Espinoza responded by moving his hand back on the gun and telling Gil to run or else be killed. Under questioning from the prosecutor, Gil demonstrated the motion. At the prosecutor's request, the trial court noted for the record that the motion demonstrated by Gil was "ratcheting."

The jury reasonably could have inferred from this testimony that Espinoza used a weapon that required a ratcheting motion to place a live round in the firing chamber, as the People maintain. Nowhere in the record, however, is there any testimony that established for the jury that the hand motion described by Gil occurs when a person chambers a live round in a semiautomatic firearm, as opposed to cocking a firearm. The relevance of the hand motion and the distinction between a semiautomatic firearm and a firearm is a matter that should have been the subject of testimony by someone knowledgeable in firearms.

The evidence established that Espinoza used a firearm. The evidence, however, did not establish that Espinoza used a semiautomatic firearm. We note that the prosecutor did not even argue to the jury that Espinoza used a semiautomatic firearm. The prosecutor referred to the offense as "assault with a firearm."

As for Espinoza's contention that the conviction cannot be sustained because the weapon was a fake, we disagree. The jury was not required to credit Espinoza's self-serving statement that the weapon used in the carjacking was a fake gun. Furthermore, at the time of the carjacking, Espinoza certainly acted as though the firearm was a real working firearm, and the jurors may have inferred from the circumstances and Espinoza's own conduct that the weapon was a firearm designed to be shot and capable of being fired. (*People v. Monjaras* (2008) 164 Cal.App.4th 1432, 1436-1437 (*Monjaras*).)

There was no substantial evidence that Espinoza used a semiautomatic firearm. (*Sanchez, supra*, 113 Cal.App.4th at p. 329.) There was, however, substantial evidence that Espinoza used a firearm within the meaning of section 245, subdivision (a)(2), the offense addressed in the jury instruction. The section 245, subdivision (a)(2) offense is a lesser included offense of section 245, subdivision (b) because the greater offense cannot be committed without also committing the lesser offense. *(People v. Birks* (1998) 19 Cal.4th 108, 117; *People v. Miceli* (2002) 104 Cal.App.4th 256, 271-272).

The jury was instructed on the section 245, subdivision (a)(2) offense prior to returning its verdict. Therefore, we will direct that the section 245, subdivision (b) conviction be stricken and that the judgment be modified to reflect a conviction for assault with a firearm under section 245, subdivision (a)(2). (§ 1181, subd. 6; *People v. Bechler* (1998) 61 Cal.App.4th 373, 378.)

(Doc. 14-1, 7-10.)

### 2. Legal Standards

To determine whether a conviction violates the constitutional guarantees of due process because of insufficient evidence, a federal court ruling on a petition for writ of habeas corpus must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  Jackson v. Virginia, 443 U.S. 307, 319, 20-21

(1979); Windham v. Merkle, 163 F.3d 1092, 1101 (9th Cir. 1998); Jones v. Wood, 114 F.3d 1002, 1008 (9th Cir. 1997).

All evidence must be considered in the light most favorable to the prosecution. Jackson, 443 U.S. at 319; Jones, 114 F.3d at 1008. It is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts; thus, it must be assumed that the trier resolved all conflicts in a manner that supports the verdict. Jackson v. Virginia, 443 U.S. at 319; Jones, 114 F.3d at 1008. The relevant inquiry is not whether the evidence excludes every hypothesis except guilt, but rather whether the jury could reasonably arrive at its verdict. United States v. Mares, 940 F.2d 455, 458 (9th Cir. 1991). Circumstantial evidence and the inferences reasonably drawn therefrom can be sufficient to prove any fact and to sustain a conviction, although mere suspicion or speculation does not rise to the level of sufficient evidence. United States v. Lennick, 18 F.3d 814, 820 (9th Cir. 1994); United States v. Stauffer, 922 F.2d 508, 514 (9th Cir. 1990); see, Jones v. Wood, 207 F.3d at 563.

The court must base its determination of the sufficiency of the evidence from a review of the record. Jackson at 324. The Jackson standard must be applied with reference to the substantive elements of the criminal offense as defined by state law. Jackson, 443 U.S. at 324 n.16; Windham, 163 F.3d at 1101.

Further, under the AEDPA, federal courts must apply the standards of Jackson with an additional layer of deference. Juan H. v. Allen, 408 F.3d 1262, 1274 (9th Cir. 2005). This Court thus asks whether the state court decision being reviewed

reflected an objectively unreasonable application of the Jackson

standards to the facts of the case.  Id. at 1275.

### 3.  Analysis

Here, the CCA expressly set forth the Jackson standard as

the applicable standard.

The state court also set forth the pertinent state law

definitions of the offenses.  To the extent that the state

court's decision rested on state law, this Court accepts the

state court's interpretation of state law.  Langford v. Day, 110

F.3d 1380, 1389 (9th Cir. 1996).  In a habeas corpus proceeding,

this Court is bound by the California Supreme Court's

interpretation of California law unless the interpretation is

determined to be clearly untenable and amounts to a subterfuge to

avoid federal review of a deprivation by the state of rights

guaranteed by the Constitution.  See, Mullaney v. Wilbur, 421 U.S.

684, 691 n.11 (1975); Murtishaw v. Woodford, 255 F.3d 926, 964

(9th Cir. 2001).  Here, no party contends that there is any

clearly untenable interpretation of state law or any subterfuge

to avoid federal review.

Further, the state court applied the Jackson standard to the

facts, noting that the trier of fact could have concluded from

the Petitioner's own behavior of affirmatively using the weapon

to threaten the victim that: 1) Petitioner used the weapon, which

was a firearm, and 2) the weapon was not a fake because

Petitioner acted as though the gun was a firearm that was not

only designed to be shot, but was capable of being fired.  The

state court thus applied the proper legal standard and reasonably

applied the Jackson standard to the facts.

1    Petitioner notes the insufficiency of the evidence to
2  support a conviction of assault with a semi-automatic firearm.
3  However, the state court acknowledged this insufficiency and
4  concluded that it was appropriate to modify the judgment to
5  reflect assault with a firearm in violation of Cal. Pen. Code
6  § 245(a) – a lesser included offense of § 245(b), assault with a
7  semi-automatic firearm.  Hence, Petitioner's contention
8  concerning the insufficiency of the evidence to support a
9  conviction of violating § 245(b) is essentially moot.

10    In sum, the state court's decision concerning Petitioner's
11  claim of insufficiency of the evidence to support his conviction
12  of assault with a firearm in violation of Cal. Pen. Code § 245(a)
13  was not contrary to, or an unreasonable application of, clearly
14  established federal law within the meaning of 28 U.S.C. §
15  2254(d)(1).  Accordingly, it will be recommended that the
16  petition be denied with respect to this claim.

17              B.   Felon in Possession of a Firearm

18    Petitioner argues that the evidence is insufficient to
19  sustain his conviction of count 4, possession of a firearm by a
20  felon in violation of Cal. Pen. Code § 12021(a)(1) because the
21  evidence did not support an inference that he possessed an actual
22  firearm.  Petitioner challenges as insufficient the testimony of
23  the victim that Petitioner ordered him to exit the vehicle by
24  pulling out a gun.  Further, he insists that the gun was fake.

25                1.   The State Court Decision

26    The CCA's decision in the direct appeal is the last reasoned
27  decision on Petitioner's claim.  The decision of the CCA is as
28  follows:

III. Evidence of Felon in Possession of a Firearm

In a related argument, Espinoza contends the evidence was insufficient to support the conviction for being a felon in possession of a firearm. He argues the evidence was insufficient because no gun was recovered, the gun was fake, and Gil's limited testimony on the characteristics of the gun was insufficient. He is mistaken.

Although we concluded in Part II, *ante*, that the evidence was insufficient to support a conviction for assault with a semiautomatic weapon, we imposed a conviction for the lesser included offense of assault with a firearm because the evidence was sufficient to establish that offense. Thus, we already have concluded the evidence was sufficient to establish that Espinoza used a firearm to assault Gil.

In order to sustain a conviction for being a felon in possession of a firearm, it must be shown that the defendant had a prior felony conviction, was in possession of a firearm, and knew that he possessed a firearm. (*People v. Jeffers* (1996) 41 Cal.App.4th 917, 922.) The prosecution also must prove the firearm was designed to be shot and appeared capable of being fired. *(People v. Hamilton* (1998) 61 Cal.App.4th 149, 153 (*Hamilton*).)

Here, Gil testified that Espinoza pulled out a chrome gun and pointed it at him. Gil also testified that Espinoza moved his hand over the gun in what was determined to be a ratcheting motion. This evidence established that Espinoza was in possession of a firearm that was designed to be shot and appeared capable of being fired. (*Hamilton, supra*, 61 Cal.App.4th at p. 153.) There is no dispute as to the presence of the other elements of the offense.

That no gun was recovered is irrelevant. The testimony of a single witness, in this case, Gil, is sufficient to support a conviction. (Evid.Code, § 411; *People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Additionally, as noted in Part II, *ante*, Espinoza's claim that the gun was a fake does not warrant reversal. The jury was not required to credit this self-serving comment and an appellate court does not reweigh the evidence. *(People v. Ferraez* (2003) 112 Cal.App.4th 925, 931.) The jurors were permitted to infer from the circumstances and Espinoza's own conduct that the weapon was a firearm designed to be shot and capable of being fired. (*Monjaras, supra*, 164 Cal.App.4th at pp. 1436-1437.)

(Doc. 14-1, 10-11.)

2.  Analysis

To the extent that the CCA relied on state law in its decision, this Court is bound by the state court's interpretation.  The state court identified not only the state law requirements for proof of the offense, but also the elements in issue, namely, that defendant was in possession of a firearm that was designed to be shot and appeared capable of being fired.

The state court reasonably applied the Jackson standard to the evidence, concluding that Gil's testimony that Petitioner pulled out a chrome gun, pointed it at Gil, and moved his hand over it established that Petitioner was in possession of a firearm designed to be shot and fired.  Further, as previously noted, the state court reasonably determined that the evidence was sufficient to establish that Petitioner used a firearm to assault Gil.  As the state court noted, the trier was entitled to draw a reasonable inference that the gun was not a fake.  The state court's reasoning was consistent with the Jackson standard, which recognizes that it is the trier of fact's responsibility to resolve conflicting testimony, weigh evidence, and draw reasonable inferences from the facts, and thus that it must be assumed that the trier resolved all conflicts in a manner that supports the verdict.  Jackson v. Virginia, 443 U.S. at 319, 326.

The state court relied on Cal. Evid. Code § 411 and a state case in concluding that the absence of a gun in evidence was irrelevant and that the victim's testimony was alone sufficient to establish the necessary elements.  This Court is bound by the state court's interpretation of state law.

///

1   In sum, the Court concludes that the state court's decision

2   that the evidence was sufficient to support Petitioner's

3   conviction of being a felon in possession of a firearm was not

4   contrary to, or an unreasonable application of, clearly

5   established federal law within the meaning of 28 U.S.C.

6   § 2254(d)(1).  Accordingly, it will be recommended that the

7   petition be denied with respect to this claim.

8          C.  <u>Criminal Threats</u>

9   Petitioner argues that the evidence is insufficient to

10  support his conviction of making criminal threats in violation of

11  Cal. Pen. Code § 422 because his threat was conditional and not

12  contingent on an act highly likely to occur.

13         1.  <u>The State Court Decision</u>

14  The decision of the CCA was the last reasoned decision on

15  Petitioner's claim.  The decision of the CCA is as follows:

16  IV. Evidence of Criminal Threats

17  The elements of a violation of section 422 are (1) the
    defendant willfully threatened to commit a crime that

18  would result in death or great bodily injury; (2) the
    threat was made with the intent that it be taken

19  seriously; (3) under the circumstances in which the
    threat was made, it conveyed a gravity of purpose and

20  an immediate prospect of execution of the threat; (4)
    the person threatened was in sustained fear for his

21  safety; and (5) the threatened person's fear was
    reasonable under the circumstances. (*People v. Toledo*

22  (2001) 26 Cal.4th 221, 227-228.)

23  Espinoza contends the evidence was insufficient to
    support his conviction for making a criminal threat

24  because his statement to Gil to run or he would be shot
    did not convey an imminent prospect of execution in

25  that Gil chose to exercise his option to run. We
    disagree.

26

27  Frankly, we can think of no more perfect example of
    this offense than what occurred here.

28  Espinoza drove Gil to the outskirts of town, pulled out
    a gun, and pointed the gun at Gil. Espinoza then told

27

Gil to run or else be killed. Immediately after making
this comment, Espinoza then made a hand motion with the
gun, as though chambering a bullet and preparing to
fire. Gil was afraid of being killed and he got out of
the car as Espinoza drove away.

The California Supreme Court concluded over 10 years
ago that the use of conditional language to threaten a
victim does not shield a defendant from liability under
section 422. (*People v. Bolin* (1998) 18 Cal.4th 297,
338 (*Bolin*).) A conditional threat "'may convey to the
victim a gravity of purpose and immediate prospect of
execution.' [Citation.]" (*Id.* at p. 340.)

The jury was instructed on all the elements of the
section 422 offense. We presume in support of the
judgment the existence of every fact the trier
reasonably could have deduced from the evidence and
draw all reasonable inferences in support of the
judgment. (*Rayford, supra*, 9 Cal.4th at p. 23.) Here,
Gil's testimony provided sufficient evidence for the
jury to have determined that all elements of section
422 were met. Therefore, reversal is not warranted.
(*Sanchez, supra*, 113 Cal.App.4th at p. 329.)

(Doc. 14-1, 11-12.)

### 2.   Analysis

As previously noted, the state court identified and applied
the Jackson standard, under which it must be assumed that the
trier of fact drew all reasonable inferences and resolved all
conflicts in a manner that supported the verdict.   Jackson, 443
U.S. at 326.   The state court reviewed the pertinent evidence,
including that Petitioner drove Gil to the outskirts of town,
pulled out a gun, pointed the gun at Gil, instructed Gil to get
out of the car, and told Gil to run or be killed.   The record
reflected that Gil was afraid Petitioner would kill him, so he
ran and called the police.

A reasonable trier of fact could have concluded from this
evidence that Petitioner made a threat under circumstances that
the threat conveyed a gravity of purpose and an immediate
prospect of execution.   A rational trier could have concluded

that Petitioner's words expressed his intention to kill Gil if he
did not immediately exit the vehicle and flee.  A rational trier
could have further concluded that pointing the gun and making a
hand motion with the gun consistent with preparations to fire,
supported the conclusion that Petitioner expressed a gravity of
purpose and an immediate prospect of execution of the threat.

To the extent Petitioner argues that the conditional nature
of the threat precluded the conviction, this Court is bound by
the state court's interpretation of state law that use of
conditional language to threaten a victim does not shield a
defendant from liability under § 422.

Petitioner argues that the state court's decision was
inconsistent with the California Supreme Court's later decision
in In re George T., 33 Cal.4th 620 (2004), which involved a high
school student's poem that he gave to several fellow students to
read.  In the poem entitled "Dark Poetry," the student stated,
inter alia, that he was evil and could be the next kid to bring
guns to kill students at school, and he warned parents to watch
their children.  Id. at 625.  The court in In re George T.
cautioned that the version of Cal. Pen. Code § 422 then in effect
required that the threat on its face, and under the circumstances
in which it was made, be so unequivocal, unconditional,
immediate, and specific as to convey to the person threatened a
gravity of purpose and an immediate prospect of execution of the
threat.  Id. at 630.  Because a First Amendment defense was
raised by the defendant in that case, the court engaged in an
independent review of the record and rejected the prosecution's
invitation to apply the customary sufficiency of the evidence

standard.  Id. at 632-34.  The court reviewed the poem, concluding that it expressed the writer's feelings in which the disturbing language was set forth in an introspective context reflecting a mere potential of action that was devoid of any actual threat of action.  Id. at 635-36.

Here, as Petitioner has not raised a First Amendment defense, his case is governed by the Jackson standard.  Further, Petitioner's disturbing statements were not made in literary form.  They were instead made to the victim's face in an effort to deprive the victim of his vehicle and were accompanied by Petitioner's aiming a gun at the victim.

In sum, the state court decision was not contrary to, or an unreasonable application of, the Jackson standard.  It will be recommended that with respect to his claim concerning criminal threats, the petition be denied.

### D.   Enhancement for Personal Use of a Firearm

Petitioner argues that modification of charges to permit the trier to find an enhancement for personal use of a firearm pursuant to Cal. Pen. Code § 12022.5(b) was an unauthorized act because the initial charge was a violation of § 12022.5(a).  He further contends that the enhancement was not supported by sufficient evidence and should be stricken in its entirety.

### 1.   The State Court Decision

V. Firearm Enhancement

Espinoza contends the firearm enhancement appended to count 2, the assault with a semiautomatic firearm conviction, must be reversed because the use of a firearm is an element of the offense. Additionally, Espinoza again argues the evidence was insufficient to support a finding that he used a firearm during the carjacking. Finally, Espinoza challenges the enhancement because the information alleged a section

12022.5, subdivision (a) enhancement and the verdict form references a section 12022.5, subdivision (b) true finding.

We previously addressed, and rejected, Espinoza's argument that he did not use a firearm, or used only a fake firearm. We therefore reject without further discussion Espinoza's contention that the evidence was insufficient to support a true finding that he used a firearm.

We next address the contention that the true finding that Espinoza used a firearm within the meaning of section 12022.5, subdivision (b) must be stricken because the information alleged use within the meaning of subdivision (a) of that code section. The distinction between subdivisions (a) and (b) of section 12022.5 is that subdivision (a) references use of a firearm and subdivision (b) addresses use of an assault weapon or machine gun. There is no evidence whatsoever that Espinoza used an assault weapon or machine gun.

The error in the verdict form in referencing subdivision (b) instead of subdivision (a) of section 12022.5 as stated in the information clearly was typographical. The prosecution never asserted that Espinoza had used a machine gun or assault weapon. The jury's intent was clear-to find true that Espinoza used a firearm. Technical defects can be corrected. (See *Bolin, supra*, 18 Cal.4th at p. 331.)

Regardless of whether the reference to subdivision (b) of section 12022.5 is viewed as a technical defect, this court has the power to modify the finding to conform to the evidence. (§ 1181, subd. 6.) Therefore, we will direct that the verdict and the abstract of judgment be modified to reflect a true finding under section 12022.5, subdivision (a).

We also reject Espinoza's contention that the section 12022.5 enhancement must be stricken because use of a firearm is an element of the offense of assault with a firearm. Section 12022.5, subdivision (d) states in relevant part:

> "Notwithstanding the limitation in subdivision (a) relating to being an element of the offense, the additional term provided by this section shall be imposed for any violation of Section 245 if a firearm is used...."

The California Supreme Court held in *People v. Ledesma* (1997) 16 Cal.4th 90, 97, that "[section 12022.5] subdivision (d) creates an exception to the proviso in subdivision (a) and renders imposition of a use

enhancement mandatory for the enumerated offenses."
Accordingly, imposition of the section 12022.5,
subdivision (a) enhancement appended to the section
245, subdivision (a)(2) offense of assault with a
firearm is mandatory.

DISPOSITION

The count 2 verdict is modified to reflect a conviction
pursuant to section 245, subdivision (a)(2). The
firearm enhancement appended to count 2 is modified to
reflect a true finding under section 12022.5,
subdivision (a). The matter is remanded for
resentencing in accordance with the modifications. In
all other  respects the judgment is affirmed.

(Doc. 14-1, 12-14.)

## 2. <u>Analysis</u>

Insofar as Petitioner challenges the authority of the state

court to modify the enhancement from § 12022.5(b) (as reflected

in the verdict form) to § 12022.5(a) (as reflected in the

information and the evidence), Petitioner is not entitled to

relief in this proceeding because the state court's modification

of the verdict was undertaken pursuant to the state court's

interpretation and application of state law.  The state court

proceeded pursuant to Cal. Pen. Code § 1181(6) and the ability to

correct technical defects pursuant to <u>People v. Bolin</u>, 18 Cal.4th

297, 330-31 (1998), which in turn relied on state law provisions.

This Court is bound by the state court's decision on these state

law matters.

Likewise, the state court's decision rejecting Petitioner's

contention that the § 12022.5 enhancement must be stricken

because use of a firearm is an element of the offense of assault

with a firearm, was based on the provisions of § 12022.5(d), a

state statute, and <u>People v. Ledesma</u>, 16 Cal.4th 90, 97 (1997), a

decision that was premised entirely on state law.  This Court is

1  bound by the state court's decision.

2      Finally, regarding Petitioner's contention that the

3  enhancement pursuant to § 12022.5(a) was not supported by

4  sufficient evidence, the state court simply reiterated its

5  previous conclusion that the evidence was sufficient to support a

6  finding that Petitioner used a firearm that was not fake.  As

7  previously noted, the state court reasonably applied clearly

8  established federal law in arriving at those conclusions.

9      Accordingly, it will be recommended that Petitioner's claim

10 concerning the § 12022.5 enhancement be denied.

11     IX.  <u>New Claims Raised in the Traverse</u>

12     Petitioner raises what appear to be new claims for the first

13 time in the traverse.  Petitioner contends that his confession to

14 Detective Pinon was coerced because Pinon told him that because

15 Petitioner's wife or girlfriend was driving when the car was

16 apprehended, Pinon was going to arrest and imprison her for

17 driving a stolen car unless Petitioner confessed.  (Traverse,

18 doc. 25, 8.)  Further, his trial counsel's failure to impeach

19 Pinon with this information constituted prejudicial, ineffective

20 assistance of counsel in violation of Petitioner's Sixth and

21 Fourteenth Amendment rights.  (<u>Id.</u> at 9.)  Thus, the evidence is

22 insufficient because without Petitioner's confession, the state

23 has no case.  (<u>Id.</u>)

24     Petitioner also appears to claim that the prosecutor engaged

25 in misconduct in commenting on Gil's testimony by providing the

26 only testimony that Petitioner's alleged hand motion over the gun

27 was a ratcheting of a weapon.  (<u>Id.</u> at 2.)  It is improper to

28 raise substantively new issues or claims in a traverse, and a

court may decline to consider such matters; to raise new issues, a petitioner must obtain leave to file an amended petition or additional statement of grounds. Cacoperdo v. Demosthenes, 37 F.3d 504, 507 (9th Cir. 1994), cert. den., 514 U.S. 1026 (1995).

Here, review of Petitioner's brief in the CCA and his petition for review in the CSC reflect that Petitioner did not present these claims to the state courts. Petitioner has not sought to amend his petition and has not justified the significant delay in raising claims based on facts which necessarily were within Petitioner's knowledge during the state court proceedings. Thus, the Court should decline to consider Petitioner's new claims raised for the first time in the traverse.

X. Motion for an Evidentiary Hearing

Petitioner moves for an evidentiary hearing. (Traverse, doc. 25, 3.)

The decision to grant an evidentiary hearing is generally a matter left to the sound discretion of the district courts. 28 U.S.C. § 2254; Habeas Rule 8(a); Schriro v. Landrigan, 550 U.S. 465, 473 (2007). To obtain an evidentiary hearing in federal court under the AEDPA, a petitioner must allege a colorable claim by alleging disputed facts which, if proved, would entitle him to relief. Schriro v. Landrigan, 550 U.S. at 474.

The determination of entitlement to relief is, in turn, limited by 28 U.S.C. § 2254(d)(1), which requires that to obtain relief with respect to a claim adjudicated on the merits in state court, the adjudication must result in a decision that was either contrary to, or an unreasonable application of, clearly

34

1  established federal law.  Schriro v. Landrigan, 550 U.S. at 474.

2  Further, in analyzing a claim pursuant to § 2254(d)(1), a federal

3  court is limited to the record before the state court that

4  adjudicated the claim on the merits.  Cullen v. Pinholster, 131

5  S.Ct. 1388, 1398 (2011).

6       Thus, when a state court record precludes habeas relief

7  under the limitations set forth in § 2254(d), a district court is

8  not required to hold an evidentiary hearing.  Cullen v.

9  Pinholster, 131 S.Ct. 1388, 1399 (2011) (citing Schriro v.

10  Landrigan, 550 U.S. 465, 474 (2007)).  An evidentiary hearing may

11  be granted with respect to a claim adjudicated on the merits in

12  state court where the petitioner satisfies § 2254(d)(1), or where

13  § 2254(d)(1) does not apply, such as where the claim was not

14  adjudicated on the merits in state court.  Cullen v. Pinholster,

15  131 S.Ct. at 1398, 1400-01.

16       Here, on the basis of the record before this Court,

17  Petitioner has not shown that he is entitled to relief under

18  § 2254(d)(1).  Accordingly, it will be recommended that

19  Petitioner's motion for an evidentiary hearing be denied.

20       XI.  Certificate of Appealability

21       Unless a circuit justice or judge issues a certificate of

22  appealability, an appeal may not be taken to the Court of Appeals

23  from the final order in a habeas proceeding in which the

24  detention complained of arises out of process issued by a state

25  court.  28 U.S.C. § 2253(c)(1)(A); Miller-El v. Cockrell, 537

26  U.S. 322, 336 (2003).  A certificate of appealability may issue

27  only if the applicant makes a substantial showing of the denial

28  of a constitutional right.  § 2253(c)(2).  Under this standard, a

petitioner must show that reasonable jurists could debate whether
the petition should have been resolved in a different manner or
that the issues presented were adequate to deserve encouragement
to proceed further.  <u>Miller-El v. Cockrell</u>, 537 U.S. at 336
(quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)).  A
certificate should issue if the Petitioner shows that jurists of
reason would find it debatable whether the petition states a
valid claim of the denial of a constitutional right and that
jurists of reason would find it debatable whether the district
court was correct in any procedural ruling.  <u>Slack v. McDaniel</u>,
529 U.S. 473, 483-84 (2000).

In determining this issue, a court conducts an overview of
the claims in the habeas petition, generally assesses their
merits, and determines whether the resolution was debatable among
jurists of reason or wrong.  <u>Id.</u>  It is necessary for an
applicant to show more than an absence of frivolity or the
existence of mere good faith; however, it is not necessary for an
applicant to show that the appeal will succeed.  <u>Miller-El v.
Cockrell</u>, 537 U.S. at 338.

A district court must issue or deny a certificate of
appealability when it enters a final order adverse to the
applicant.  Rule 11(a) of the Rules Governing Section 2254 Cases.

Here, it does not appear that reasonable jurists could
debate whether the petition should have been resolved in a
different manner.  Petitioner has not made a substantial showing
of the denial of a constitutional right.

Accordingly, it will be recommended that the Court decline
to issue a certificate of appealability.

36

XII.   <u>Recommendations</u>

In accordance with the foregoing analysis, it is RECOMMENDED that:

1)   The petition for writ of habeas corpus be DENIED; and

2)   Petitioner's request for an evidentiary hearing be DENIED; and

3)   Judgment be ENTERED for Respondent; and

4)   The Court DECLINE to issue a certificate of appealability.

These findings and recommendations are submitted to the United States District Court Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636 (b)(1)(B) and Rule 304 of the Local Rules of Practice for the United States District Court, Eastern District of California.  Within thirty (30) days after being served with a copy, any party may file written objections with the Court and serve a copy on all parties.  Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  Replies to the objections shall be served and filed within fourteen (14) days (plus three (3) days if served by mail) after service of the objections.  The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:    September 24, 2012**          **/s/ Sheila K. Oberto**
                                          UNITED STATES MAGISTRATE JUDGE